IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SZY HOLDINGS, LLC, | ) | |
| | ) | |
| FARFROMBORINGPROMOTIONS.COM, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01475-LO-JFA |
| | ) | |
| IPF SOURCING LLC, | ) | |
| | ) | |
| RICO GARCIA, | ) | |
| | ) | |
| HAMSA HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

SZY Holdings, LLC ("SZY") and FarFromBoringPromotions.com, LLC ("FFB") (together, "Plaintiffs") file this second amended complaint against the defendants named below ("Defendant" individually, or "Defendants" collectively). In support, Plaintiffs allege as follows:

## The Parties

1. SZY is a three member limited liability company headquartered in the State of New York. At all relevant times hereto SZY's three members have been individuals who were citizens of the State of New York.

2. FFB is a two member limited liability company headquartered in the State of Florida. At all relevant times hereto FFB's two members have been individuals who were citizens of the State of Florida.

3. IPF Sourcing LLC ("IPF") is a limited liability company headquartered in Arlington County, in the Commonwealth of Virginia. Upon information and belief, at the time

this action was commenced its members were individuals who were citizens of Arizona, the Commonwealth of Virginia and Massachusetts. At the time this action was filed Anshu Arora was IPF's Registered Agent in Virginia, based on his status as a managing member of IPF.

4. Rico Garcia is upon information and belief an adult citizen and resident of Colorado. Mr. Garcia was the sole or controlling member of a Colorado limited liability company named Botani Labs, LLC that was formed in 2016. This Botani Labs entity was formally dissolved on June 8, 2021.

5. Mr. Garcia also is the sole or controlling member of a Nevada limited liability company named Hamsa Holdings, LLC. Hamsa Holdings was created on May 4, 2020, and was voluntarily dissolved on November 10, 2021.

6. Mr. Garcia also was the sole or controlling member of a Colorado limited liability company named Granada Holdings, LLC. Granada Holdings was created on October 14, 2020 and was voluntarily dissolved on November 1, 2021.

7. Mr. Garcia also was the sole or controlling member of a Nevada limited liability company named Botani-Labs, LLC. Botani-Labs, LLC was formed in June 12, 2020 and was voluntarily dissolved on September 23, 2021.

## Jurisdiction and Venue

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(l), because SZY and FFB are citizens of different states than those states of which any defendant is considered a citizen, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 2201(a), because an actual controversy exists between the parties regarding their respective obligations under the terms of written contracts to which they are parties or have rights.

10. Venue is proper in this District under 28 U.S.C. § 1391(6)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District. In addition, the three contracts which are at issue between Plaintiffs and IPF contain choice of forum agreements which require litigation of disputes over those contracts exclusively in this Court or in the state courts located in Arlington County, Virginia.

11. The Court has personal jurisdiction over IPF because IPF: a) is organized and existing under the laws of the Commonwealth of Virginia; b) had its only registered office of record located in this District, at 1101 Wilson Boulevard, 9th Floor, Arlington, Virginia; c) transacts business in Virginia from its registered office of record in Virginia, based on information and of belief; and, d) has entered into contractual agreements in which it has consented to the personal and exclusive jurisdiction and venue in either this Court or the state courts located in Arlington County, Virginia.

12. The Court has personal jurisdiction over Mr. Garcia because Mr. Garcia negotiated a contract on behalf of Botani Labs, LLC, a Colorado limited liability company, with IPF in Virginia. The last communication between Mr. Garcia and IPF before formation of the contract was a telephone call between Mr. Garcia and IPF principal Anshu Arora, who was in Arlington, Virginia. In that conversation Mr. Garcia made false representations to Mr. Arora which were intended to and did induce IPF to enter into the contract with Botani Labs. As a result of and in reliance on these representations, IPF entered into the contract with Botani Labs,

and caused the transfer of approximately $2,500,000.00 to Mr. Garcia, which Mr. Garcia then stole.

## Factual Background as to IPF

13. IPF entered into three contractual agreements with FFB entitled "IPF Sourcing LLC Agreement", which also are sometimes referred to as "Product Distribution Agreements" (which also may be collectively referred to as the "Agreements"). All three Agreements were executed on April 21, 2020. However, one of the Product Distribution Agreements was dated "as of" April 14, 2020, while the other two were dated "as of" April 18, 2020.

14. The Agreements were entered into as a result of IPF's representations that it was a long standing and competent source for the manufacture and supply of hand sanitizer products.

15. Under the terms of the Product Distribution Agreements IPF was to supply FFB's retail customers with millions of bottles of hand sanitizer. Because of the COVID 19 pandemic, the demand for hand sanitizer was far greater than the available supply. FFB had agreements in place with various large volume retail customers who had agreed to purchase the hand sanitizer which contained delivery schedules. FFB's customers, in turn, planned to re-sell the hand sanitizer to consumers. IPF was aware of these delivery schedules.

16. IPF was to source only certain approved manufacturers of hand sanitizer (the "Approved Manufacturers"), since FFB's customers required very strict quality control of the hand sanitizer product, including bottle size and shape, labels, and color. Once properly sourced, IPF was to oversee the required production and manufacture of hand sanitizer, in order to ensure proper manufacture to specification.

17. The earliest of the Product Distribution Agreements was dated as of 4/14/2020. It was for 9 million 16 oz. bottles of hand sanitizer for the total price of $37,800,000. The delivery schedule was April 30, May 4, May 11, May 18, May 25, and June 1, 2020.

18. The other two Product Distribution Agreements were dated as of 4/18/2020. One of these 4/18/2020 Agreements was for 9 million 16 oz. bottles of hand sanitizer for the total price of $37,800,000. The delivery schedule under this Agreement was May 20, May 27, June 3, June 10, June 17 and June 24, 2020.

19. The remaining Product Distribution Agreement also was dated 4/18/2020. This last Agreement was for 4 million 8 oz. bottles of hand sanitizer for the total price of $10,000,000. The delivery schedule for this Agreement was May 1, May 8, May 15, May 22, and May 29, 2020.

20. On April 22, 2020, FFB executed a document entitled "Notice of Assignment of Contract" which assigned FFB's rights under the IPF Product Distribution Agreements to SZY. IPF also executed this document, confirming its consent to the assignment.

21. SZY then financed IPF's production costs for the hand sanitizer pursuant to the terms of the Product Distribution Agreements.

22. SZY provided funds directly to the Walckner Law Office ("Walckner") under the terms of a Paymaster Service Agreement, whereby Walckner agreed to act as neutral party who would handle the payment of money to the Approved Manufacturers. On April 27 and April 28, 2020 SZY transmitted $5,201,146.40 to Walckner (the "Funds"). Walckner, in turn, wire transferred $2,493,750.00 to Botani Labs on April 27, 2020, and provided the remaining Funds directly to IPF, as opposed to the Approved Manufacturers. Walckner was recommended by IPF.

23. Notwithstanding the fact that SZY caused the Funds to be delivered to IPF through Walckner, IPF failed to provide the hand sanitizer to FFB's retail customers as and when agreed according to the terms of the Agreements. Limited samples of hand sanitizer produced to FFB's customers by IPF failed to conform with the requirements of the parties' Agreements and the representations made by IPF, and would not be approved by FFB's customers.

24. IPF has failed to return the Funds to SZY, FFB or Walckner even though a demand for the funds has been made on IPF.

25. One June 12, 2020 counsel for SZY sent IPF a letter terminating the Product Distribution Agreements. The termination letter also demanded return of the Funds, and an accounting. Notwithstanding this demand, the Funds have not been returned, and IPF failed and refused to provide an accounting. Moreover, IPF refused to identify the various factories it contracted with to manufacture the hand sanitizer.

26. IPF represented, through counsel, that it commenced an arbitration against its vendor who was to supply it with hand sanitizer for FFB under the Agreements, and that the arbitration proceeding is pending in Colorado before the Judicial Arbitration and Mediation Service. This vendor, Botani Labs, was not approved by FFB's customers to manufacture hand sanitizer, and, instead, was engaged in the business of manufacturing cannabis products. IPF represented that it made payment to its vendor, who it refused to identify by name, in the amount of $2.4 million dollars, and that the vendor materially breached its obligations under the terms of its agreement with IPF. IPF has further represented that the vendor failed and refused to return any portion of the $2.4 million dollars it received from IPF. Until this litigation IPF failed and refused to provide documentation supporting these representations to SZY.

27. IPF refused to provide an accounting of the monies it received from SZY in connection with the Agreements until after this litigation was filed. Accordingly, neither SZY nor FFB knew where the funds went after they were transmitted to IPF until they learned these facts in this litigation.

28. IPF also refused to escrow the remaining unspent portion of the Funds which it received from SZY.

29. SZY offered to join in the arbitration proceeding which IPF represented that it asserted against Botani Labs in Colorado. However, because IPF refused to provide an accounting of the Funds, and refused to escrow the remaining unspent portion of the Funds which it received from SZY, the parties were unable to enter into an agreement to cooperate necessary to being able to work together to address and jointly pursue those claims.

30. Moreover, because IPF failed and refused to provide an accounting of the Funds, and refused to escrow the remaining unspent portion of the Funds which it received from SZY, SZY and FFB are concerned that IPF has used or may use all or some portion of the Funds for its own purposes or for the benefit of its members, and that the Funds may be transferred beyond the jurisdiction of this Court.

31. The concerns of SZY and FFB addressed above were heightened by veiled threats made by IPF, through counsel, that in the event of litigation between the parties, IPF may elect to not defend the litigation on the merits, and may instead seek bankruptcy protection because it has no assets. The concerns expressed in paragraphs 30 and 31 herein would leave Plaintiffs irreparably inured, and without an adequate remedy at law.

**Factual Background as to Rico Garcia and His Entities**

32. IPF entered into an agreement with Botani Labs on or about April 28, 2020, whereby Botani Labs agreed to manufacture or source hand sanitizer for IPF, which IPF intended to use to partially perform its obligations to SZY under the Product Distribution Agreements.

33. About a day before entering into the agreement with Botani Labs, IPF principal Anshu Arora had a telephone call with Mr. Garcia. In that conversation Mr. Garcia made false representations to Mr. Arora, who was in Arlington, Virginia, about Mr. Garcia's ability and intent to perform under the contemplated agreement to supply hand sanitizer to IPF. Mr. Garcia made these misrepresentations in order to induce Mr. Arora and IPF to enter into the contemplated contract with Botani Labs.

34. Relying on Mr. Garcia's representations about intentions to perform and his expressions of good faith, IPF entered into the agreement with Botani Labs, whereby IPF agreed to pay Botani Labs the total sum of $2,493,750.00, and Botani Labs agreed to supply 1,330,000 16 oz. bottles of 70% alcohol gel hand sanitizer to IPF at a cost of $3.75 per bottle (the "Botani-IPF Agreement").

35. In full satisfaction of IPF's obligations of performance under the Botani-IPF Agreement, IPF caused Walckner to effectuate a wire transfer to Botani Labs in the amount of $2,493,750.00. The monies were wire transferred into an account in the name of Botani Labs at JP Morgan Chase Bank NA in Colorado on April 29, 2020.

36. Botani Labs never provided any hand sanitizer to IPF, either in accordance with the Botani-IPF Agreement, or otherwise. Upon information and belief, Botani Labs did not take any actions to materially perform under the Botani-IPF Agreement.

37. IPF repeatedly demanded performance by Botani Labs under the Botani-IPF Agreement. However, Botani Labs failed and refused to perform.

38. IPF demanded that Botani Labs return the $2,493,750.00 which IPF caused to be paid to Botani Labs in accordance with the parties' agreement. Botani Labs failed and refused to return any of these funds.

39. As a consequence of the complete failure of Botani Labs to perform under the Botani-IPF Agreement, and the failure of Botani Labs to return the $2,493,750.00, IPF commenced an arbitration proceeding against Botani Labs before the JAMS tribunal.

40. In the context of that arbitration proceeding, IPF obtained documents which showed that the Botani Labs principal, Rico Garcia, created a new entity called Hamsa Holdings, LLC under Nevada law on May 4, 2020, only six days after his receipt of the $2,493,750.00 from Walckner.

41. Discovery documents obtained in the JAMS arbitration by IPF also showed that on May 11, 2020 Mr. Garcia deposited $2,428,783.00 into an account in the name of Hamsa Holdings, LLC at a Bank of America branch in Nevada. The reference for the transaction said "Land Purchase." These funds came from the monies that Botani Labs received from Walckner as detailed in paragraph 35, above.

42. Accordingly, Mr. Garcia never had any intention of causing Botani Labs to perform under the Botani-IPF Agreement. Rather, Mr. Garcia had planned at all relevant times to convert, abscond with and steal the $2,493,750.00 which he obtained from Walckner under false pretenses. Mr. Garcia made misrepresentations to Mr. Arora about his intention to perform under an agreement with IPF in order to induce IPF to enter into a contract with Botani, and to induce IPF's performance.

43. In October of 2020 Mr. Garcia created Granada Holdings LLC under Colorado law. Mr. Garcia then deposited $300,000 into an account with Bank of America in the name of Granada Holdings. Upon information and belief, a portion of the monies deposited into the Granada Holdings LLC account with Bank of America were funds received from Walckner.

## COUNT I - BREACH OF CONTRACT - AGAINST IPF

44. Plaintiffs incorporate by reference the allegations of paragraphs 1-43 set forth above as if fully set forth herein.

45. FFB and IPF were parties to the three Product Distribution Agreements, which three documents governed the rights and obligations of those parties.

46. To the extent that FFB owed any obligation to IPF after IPF approved FFB's assignment to SZY, FFB performed its obligations under the Product Distribution Agreements by obtaining the Funds and by arranging for the Funds to be delivered.

47. IPF failed to produce or provide the hand sanitizer to FFB's customers as or when required under the Product Distribution Agreements. IPF never performed its obligations under the Product Distribution Agreements, and never produced the required product in conformance with the parties' Agreements, whether on or after the required delivery dates.

48. IPF's failures to perform are without justification or excuse. IPF has materially breached its contractual performance obligations under the Product Distribution Agreements, and has failed to earn any of the Funds which it received. IPF has similarly refused to return the Funds. IPF also has failed to provide an accounting of the Funds.

49. As a result of IPF's breach and its misrepresentations, SZY and FFB have been damaged in the principal amount of $5,201,146.40, together with interest, costs, expenses, and attorneys' fees.

## COUNT II - DECLARATORY JUDGMENT - AGAINST IPF

50. Plaintiffs incorporate by reference the allegations of paragraphs 1-43 set forth above as if fully set forth herein.

51. FFB and IPF were parties to the three Product Distribution Agreements, which three documents governed the rights and obligations of those parties.

52. FFB executed the Notice of Assignment of Contract on April 22, 2020, which operated to assign FFB's rights under the Product Distribution Agreements to SZY.

53. Without justification or excuse, IPF has refused to account for, or return the portion of the Funds which remain in its possession, custody or control to SZY, or even to escrow these funds.

54. IPF's unjustified refusal to return the remaining Funds to SZY represents a bona fide controversy between the parties as to their legal rights and obligations, specifically, IPF's obligation to repay the remaining Funds to SZY.

55. Declaratory relief will serve to clarify the rights and obligations of the parties, and is therefore appropriate to resolve this controversy.

56. Plaintiffs' therefore seek a declaration and order from this Court concerning the rights and obligations of the parties, including but not limited to a declaration that IPF is obligated to repay the remaining Funds in its possession, custody or control to SZY.

## COUNT III – FRAUDULENT CONVEYANCE – AGAINST RICO GARCIA

57. Plaintiffs incorporate by reference the allegations of paragraphs 1-43 set forth above as if fully set forth herein.

58. Rico Garcia caused Botani Labs to receive $2,493,750.00 from Walckner, which funds originated from Plaintiff SZY. These funds were provided so that Mr. Garcia and Botani Labs could perform under the Botani-IPF Agreement.

59. IPF performed its obligations under the Botani-IPF Agreement, and caused Walckner to effectuate the wire transfer to Botani Labs of $2,493,750.00 on April 29, 2020.

60. Botani Labs completely failed to perform under the Botani-IPF Agreement. Botani Labs never provided any hand sanitizer to IPF, either in accordance with the Botani-IPF Agreement, or otherwise. Upon information and belief, neither Mr. Garcia nor Botani Labs took any action to materially perform under the Botani-IPF Agreement.

61. Within days after receipt of the $2,493,750.00 from Walckner, Mr. Garcia withdrew the funds from the Botani Labs bank account and transferred them into an account for a new entity he formed under Nevada law, called Hamsa Holdings, LLC. Mr. Garcia made this transfer to a Hamsa Holdings bank account in Nevada with the intent to hinder, delay and defraud the creditors of Botani Labs, including Plaintiffs. Mr. Garcia's intent was to make the $2,493,750.00 unavailable to satisfy the claims of creditors of Botani Labs, specifically including Plaintiffs, who were the source of these funds. Mr. Garcia made sure the funds were available for his own use but were unavailable to creditors by transferring the funds to a different entity in another state, knowing that the new entity had no connection to Plaintiffs. Botani Labs did not receive anything of value in return for the transfer.

62. Mr. Garcia and Botani Labs failed and refused to return any of these funds, although IPF requested that he do so.

63. As Botani Labs is now a dissolved entity, Mr. Garcia is personally liable for the pre-dissolution acts he took on its behalf. Moreover, under the circumstances of this case, Mr.

Garcia operated Botani Labs and Hamsa Holdings not as independent entities, but as his alter egos.

### COUNT IV – UNJUST ENRICHMENT – RICO GARCIA AND HAMSA HOLDINGS

64. Plaintiffs incorporate by reference the allegations of paragraphs 1-43 and 57-63 set forth above as if fully set forth herein.

65. Rico Garcia received $2,493,750.00 from Walckner, which funds originated from Plaintiff SZY. These funds were provided so that Mr. Garcia and Botani Labs could perform under the Botani-IPF Agreement.

66. Botani Labs never provided any hand sanitizer to IPF, either in accordance with the Botani-IPF Agreement, or otherwise. Upon information and belief, Botani Labs did not take any actions to materially perform under the Botani-IPF Agreement.

67. Mr. Garcia then caused Botani Labs to transfer and convey the $2,493,750.00 to Hamsa Holdings, LLC with the intent to hinder, delay and defraud the creditors of Botani Labs, including Plaintiffs. Hamsa Holdings, LLC did not provide any consideration to Botani Labs in return for the transfer and conveyance of these funds.

68. Mr. Garcia and Hamsa Holdings, LLC were enriched and received a benefit, at the expense of Plaintiff SZY, under circumstances where it would be inequitable for Mr. Garcia and Hamsa Holdings,LLC to retain the $2,493,750.00.

### PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs request the following relief:

A. A monetary judgment against IPF in the principal amount of $5,201,146.40, together with interest, costs, expenses and attorneys' fees;

B.	A declaratory judgment that IPF has materially breached the Agreements, and must pay to SZY repay any remaining Funds in its possession, custody or control;

C.	A monetary judgment against Rico Garcia and Hamsa Holdings, LLC in the principal amount of $2,493,750.00, together with interest, costs, expenses and attorneys' fees;

D.	Any other and further relief which the Court deems just and proper.


Respectfully submitted,


*/s/ Robert C. Gill*
Robert C. Gill (VSB #26266)
Robert.gill@saul.com
Ian McLin (VSB# 92403)
Ian.mclin@saul.com
Saul Ewing Arnstein & Lehr LLP
1919 Pennsylvania Avenue, NW, Suite 550
Washington, D.C. 20006-3434
Tel: (202) 295-6605
Fax: (202) 295-6705

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 27, 2022 a true and correct copy of the foregoing **SECOND AMENDED COMPLAINT** was served via the Court's ECF system on all interested persons, which included the following:

      John A. Bonello
      David, Brody & Dondershine, LLP
      2100 Reston Parkway
      Suite 370
      Reston, Virginia 20191
      *Counsel for Defendant, IPF Sourcing LLC,*

      Olaoluwaposi O. Oshinowo
      Spencer C. Brooks (*admitted pro hac vice*)
      Wiley Rein LLP
      2050 M Street NW
      Washington, DC 20006
      *Counsel for Defendants, Rico Garcia and Hamsa Holdings, LLC*


                                              /s/ *Robert C. Gill*
                                                Robert C. Gill