UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SZY HOLDINGS, LLC, *et al.*,
    *Plaintiffs*,

  v.           No. 1:20-cv-01475-MSN-JFA

IPF SOURCING LLC, *et al.*,
    *Defendants*.

## AMENDED MEMORANDUM OPINION AND ORDER

  This matter comes before the Court on remand from the United States Court of Appeals for the Fourth Circuit. This Court previously concluded that Defendants Rico Garcia ("Garcia") and Hamsa Holdings, LLC ("Hamsa") (collectively "Defendants") had waived their right to enforce any applicable arbitration agreement. On appeal, the Fourth Circuit reversed this Court's holding that Defendants had waived their right to compel arbitration and remanded for further consideration. Upon further review, this Court finds that Defendants cannot invoke an arbitration agreement to compel arbitration, and that Plaintiffs may proceed in this Court.

## I.  BACKGROUND

  On December 20, 2020, Plaintiffs SZY Holdings, LLC ("SZY") and FarFromBoringPromotions.com, LLC ("FFB") (collectively "Plaintiffs") filed a Complaint against IPF Sourcing LLC ("IPF") alleging breach of contract related to distribution agreements whereby IPF was to supply FFB's retail customers with millions of bottles of hand sanitizer during the onset of the COVID-19 pandemic. *See* ECF 1. FFB assigned its rights under the distribution agreements to SZY, which alleged that it had transmitted payment to IPF but that IPF failed to provide the hand sanitizer to FFB's customers pursuant to the distribution agreements. Id. ¶¶ 15-18.

On November 9, 2021, Plaintiffs filed their First Amended Complaint, adding Garcia and Hamsa as defendants. ECF 19 ("FAC"). The Complaint detailed a relationship between, IPF, Garcia, Hamsa, and Botani Labs, LLC ("Botani"). Plaintiffs identified Botani Labs as the vendor of hand sanitizer for IPF under FFB's distribution agreement with IPF, and alleged that Garcia was the sole and controlling member of both Botani and Hamsa. FAC ¶¶ 4, 5, 22. The Amended Complaint alleged that IPF and Botani had entered into an agreement ("IPF-Botani Agreement"), that Botani had failed to perform under the agreement, and that IPF and Botani were engaged in arbitration. FAC ¶¶ 26, 32-43. Plaintiffs alleged that SZY had transferred funds to a neutral third party for purposes of distributing those funds to manufacturers under the distribution agreement, and that third party then transferred $2,493,750 to Botani. FAC ¶ 22. Then, six days after Botani's receipt of those funds, Garcia formed Hamsa and proceeded to transfer $2,428,783 into a Hamsa bank account in Nevada. FAC ¶¶ 40-41. Plaintiffs claimed that "Mr. Garcia had planned at all relevant times to convert, abscond with and steal the $2,493,750 which he obtained from [the neutral third party] under false pretenses." FAC ¶ 42. Accordingly, Plaintiffs brought claims against Garcia for fraud and unjust enrichment. FAC ¶¶ 57-66.

Plaintiffs filed their Second Amended Complaint on May 27, 2022. ECF 68 ("SAC"). The allegations are largely the same, but Plaintiff now asserted claims for fraudulent conveyance (as opposed to fraud) against Garcia and for unjust enrichment against both Garcia and Hamsa. SAC ¶¶ 57-66.

On June 17, 2022, Defendants moved to dismiss the Second Amended Complaint for failure to state a claim under Rule 12(b)(6), arguing "lack of personal jurisdiction, preemption by a binding arbitration agreement, and failure to state a claim." ECF 76 at 1. On August 15, 2022,

Judge O'Grady[1] denied that motion, finding that the complaint was sufficient to state a claim for fraudulent conveyance against Garcia and for unjust enrichment against both Defendants. ECF 88. The Court in its order found that it was "unnecessary" at the motion-to-dismiss stage "to decide the application of the arbitration agreement because the arbitration agreement is not integral to SZY's complaint." *Id.* at 5.

On August 23, 2022, Defendants and IPF filed a motion for reconsideration of Judge O'Grady's Order, arguing that the Court should have looked outside the pleadings and considered their arguments regarding the applicability of the IPF-Botani agreement and its arbitration clause rather than deferring ruling on its applicability, and should have construed the motion to dismiss as a motion to compel arbitration. ECF 89 at 1-2. On March 6, 2023, the undersigned denied that motion to reconsider, finding that Defendants had waived their right to arbitrate by acting inconsistently with that right, thus belying any need to consider whether the arbitration agreement actually applied. ECF 103 at 9-12 (citing *Morgan v. Sundance, Inc*, 596 U.S. 411 (2022)).

Defendants initiated an interlocutory appeal of the denial of the motion to reconsider, ECF 106, and after briefing on appeal the Court of Appeals for the Fourth Circuit reversed and remanded, issuing an unpublished opinion on August 29, 2024, ECF 125. In doing so, the Fourth Circuit found that Defendant's "failure to file a formal demand for arbitration" was immaterial because Defendants had "consistently requested arbitration before formally moving to compel it." *Id.* at 7. Accordingly, the Fourth Circuit "remand[ed] with instructions for the district court to determine whether the dispute is 'referable to arbitration.'" *Id.* at 8 (quoting 9 U.S.C. § 3).

On remand from the Fourth Circuit, this Court ordered the parties to file a status report informing it of the state of this case. ECF 128. The parties conferred and consented to

---

[1] This case was reassigned to the undersigned on August 30, 2022.

"simultaneous brief[ing] to this Court on the issue of whether this dispute is properly referrable to arbitration." ECF 129 at 1. The Parties submitted their briefs on October 25, 2024. ECF 130 ("Pl.' Br."); ECF 131 ("Def.'s Br.").[2]

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Where a party is "aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition [the Court] for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

The FAA creates "a body of federal substantive law of arbitrability" under which "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "However, arbitration must be contracted for, and courts apply ordinary state law contract principles to determine whether a valid arbitration agreement exists." *Hetrick Companies LLC v. IINK Corp.*, 710 F. Supp. 3d 467, 481 (E.D. Va. 2024) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Because 'traditional principles' of state contract law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,'" parties may be able to invoke an arbitration agreement even were the exact parties who made that agreement are

---

[2] Prior to the onset of this litigation and after competing arbitration demands by Botani and IPF, a JAMS arbitration panel was convened on July 9, 2020. ECF 130-1 at 5. The Arbitration panel found in 2021 that IPF was entitled to $2,493,750 plus interest in compensatory damages and $1,000,000 in exemplary damages. *Id.* at 16-20. During the arbitration, Botani "failed and refused to pay its agreed 50% share of an estimated advance charge for the proceedings." *Id.* at 15.

not the same as the parties in litigation. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)).[3]

## III.   ANALYSIS

The parties do not appear to contest that this is a case in which the substance of the issues falls within the scope of the IPF-Botani agreement. *See* ECF 131-1 at 2 ("The parties agree that any dispute or claim arising from the purchase and/or use of the product will be resolved by binding arbitration."). Thus, rather than being about the "federal substantive law of arbitrability," *Moses H. Cone*, 460 U.S. at 24, this is a case about whether, under the common law of contracts, the agreement applies to the parties here. Such cases typically involve *either* a party-defendant seeking to enforce an agreement against a non-party plaintiff or a non-party defendant seeking to enforce an agreement against a party plaintiff. *See, e.g.*, *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 288 (4th Cir. 2023) (non-signatory defendant claiming that arbitration agreement between plaintiff and third-party agency required arbitration of dispute); *Hetrick*, 710 F. Supp. 3d at 482-492 (defendant party to arbitration agreement seeking to compel arbitration by nonsignatory plaintiff). This is the unusual case that involves both. That is, Defendants must show (1) that the arbitration agreement can be enforced against the nonsignatory Plaintiffs, and (2) that they, as nonsignatories themselves, can enforce it.

### A.   The Arbitration Agreement May Not Be Wielded Against Plaintiffs.

Defendants first argue that Plaintiffs are bound by the arbitration clause in the IPF-Botani agreement under the doctrine of estoppel, as a third-party beneficiary, as a successor-in-interest,

---

[3] In *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000), the Fourth Circuit held that "the determination of whether . . . .a nonsignatory[] is bound by [an arbitration] contract presents no state law question," but is instead a question of the "federal substantive law of arbitrability." But as this Court recognized in *Hetrick*, the Supreme Court's decision in *Arthur Anderson* and subsequent precedent from other circuits indicates the opposite. 710 F. Supp. 3d at 483-484. "[G]iven the Supreme Court's command in *Arthur Andersen*, the unanimous opinion of the courts of appeals, and the irreconcilability of the internal Fourth Circuit caselaw, state—not federal—law should govern whether a nonsignatory is bound to an arbitration agreement." *Id.* at 484.

and under the doctrine of assumption. This Court must look to Colorado law, which governs the IPF-Botani agreement, to determine whether Plaintiffs may be bound under any such doctrine. *See* ECF 131-1 at 2 ("This agreement will be governed and construed in all respects in accordance with the laws and regulations of the State of Colorado."). The Court finds that none applies.

### 1. Estoppel.

As Defendants point out, Colorado courts have applied the doctrine of estoppel in analyzing whether nonsignatory parties are bound by an arbitration agreement. Defendants cite *Meister v. Sout*, 353 P.3d 916, 920 (Colo. Ct. App. 2015), where the Colorado Court of Appeals held that under equitable estoppel, "a signatory to an arbitration agreement may compel arbitration of a claim brought against it by a nonsignatory plaintiff, so long as the claim arises from the agreement containing the arbitration provision." Or as an earlier Colorado case put it, a party is "estopped from avoiding" an "arbitration provision[]" if it is "seeking to invoke the duties the investment company allegedly owed them as a result of the signature of its representative." *Smith v. Multi-Financial Secs. Corp.*, 171 P.3d 1267, 1272 (Colo. Ct. App. 2007). There, the Court of Appeals favorably cited the Fourth Circuit's decision in *International Paper*, in which a plaintiff whose distributor had contracted with a manufacturer sued the manufacturer on the basis of breaches of the distributor-manufacturer contract. *Id.* at 1272 (citing *International Paper*, 206 F.3d at 418.) "The [Fourth Circuit] ruled that because the distributor-manufacturer contract provided part of the factual foundation for every claim asserted by the plaintiff against the manufacturer, the plaintiff could not seek to enforce those rights and avoid the contract's requirement that disputes 'arising out of' the contract be arbitrated."

So far so good for Defendants. However, they ignore the glaring reality that the Colorado Supreme Court has—after the Colorado Court of Appeals cases were decided—imposed a much higher bar for the invocation of equitable estoppel in the arbitration context. That court found in

2019 that Colorado's "strong policy in favor of arbitration agreements" was "not sufficient to support" an estoppel rule "predicated upon the interconnectivity of claims and actions taken in concert by signatories and nonsignatories to an arbitration agreement." *Santich v. VCG Holding Corp.*, 443 P.3d 62, 66 (Colo. 2019). Instead, it held, "estoppel may not be applied" to compel arbitration "absent a clear showing of each of [its] four elements." *Id.* at 65.[4] In a footnote, Defendants argue that *Santich* should be confined to circumstances when "non-signatories" rely on the doctrine "to compel signatories to participate in arbitration," and did not apply to the "converse situation of a signatory . . . seeking to compel arbitration of claims made *against* it by a *non*-signatory." Def.'s Br. 3 n.2 (emphases in original). This Court cannot agree with Defendants' reading of *Santich*. While the *facts* of *Santich* involved a situation in which non-signatories sought to compel a signatory into arbitration, its *holding* is not confined to such circumstances. Rather, it rejects entirely the "new theory of equitable estoppel" adopted by the Colorado Courts of Appeals, and returns Colorado law to its "traditionally defined elements." 443 P.3d at 66.

In spite of this, Defendants have made no argument whatsoever regarding the elements of equitable estoppel, much less made the clear showing that Colorado law requires. For that reason, the nonsignatory Plaintiffs may not be compelled to arbitrate under that doctrine.

### 2. Third-Party Beneficiary.

Defendants next argue that Plaintiffs may be compelled to arbitrate as third-party beneficiaries of the IPF-Botani Agreement. Def.'s Br. 4. While they are correct that Colorado law has endorsed third-party beneficiary status as a basis for compelling arbitration, their argument on this front is thin. Def.'s Br. 4-5 (citing *N.A. Rugby Union LLC v. United States of America Rugby*

---

[4] Those elements are that "[T]he party against whom the estoppel is asserted must know the [relevant] facts; that party must also intend that its conduct be acted upon or must lead the other party to believe that its conduct is so intended; the party claiming estoppel must be ignorant of the true facts; and the party asserting the estoppel must detrimentally rely on the other party's conduct." *Santich*, 443 P.3d at 65.

*Football Union*, 442 P.3d 859, 863-864 (Colo. 2019)). One criterion for determining that a party is a third-party beneficiary under Colorado law is "that the contracting parties intended to benefit the third party." *Lane v. Urgitus*, 145 P.3d 672, 683 (Colo. 2006) (en banc) (Eid J., concurring) (citing *E.B. Roberts Constr. Co. v. Concrete Contractors, Inc.*, 704 P.2d 859, 865 (Colo. 1985) (en banc)). Here, there is no evidence presented by Defendants or in the record that they both *intended* to benefit SZY or FFB. The IPF-Botani agreement makes no mention of Plaintiffs. *See* ECF 131-1. And the Plaintiff's Complaint alleges simply that "IPF entered into an agreement with Botani Labs on or about April 28, 2020, whereby Botani Labs agreed to manufacture or source hand sanitizer for IPF, which IPF intended to use to partially perform its obligations to SZY under the Product Distribution Agreements." SAC ¶ 32. Put simply, Plaintiffs do not claim the status of third-party beneficiaries, nor do Defendants put forth any evidence that they were. So Defendants cannot compel arbitration on those grounds.[5]

### 3. Assumption.

Defendants next argue that by their conduct Plaintiffs assumed the rights and obligations of the Botani-IPF arbitration agreement by "invit[ing] Garcia to add them to" the arbitration. Def.'s Br. 5-7. They cite case law in which courts have found that a party's conduct manifested an acknowledgement of their being bound by an arbitration agreement. Under Colorado law, this is essentially a version of estoppel, whereby a party may not refuse to arbitrate after previously "manifest[ing] an intention to be bound" by an arbitration agreement. *Herrera v. Santiago Law Offices, P.C.*, 520 P.3d 698, 703 (Colo. Ct. App. 2022) (quoting *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773 (2d Cir. 1995)). But like the Plaintiff in *Herrera*, Plaintiffs here have

---

[5] While such evidence need not lie in the terms of the contract itself, and may "be apparent" from "surrounding circumstances," Defendants have not presented such evidence that they intended their performance to benefit Plaintiffs rather than simply IPF. *E.B. Roberts*, 704 P.2d at 865.

"disavowed" any obligations arising out of the Botani-IPF Agreement. Their invitation—while this suit in federal court was pending—to join the since-concluded Botani-IPF arbitration is not inconsistent with their right to proceed in this case. In other words, the mere "acknowledge[ment] of the arbitration process," Def.'s Br. 5, involving parties to an arbitration agreement cannot on its own bind Plaintiffs to that process.

### 4.  Successor in Interest.

Lastly, Defendants argue that "Plaintiffs received and succeeded IPF's interests under the Botani-IPF Agreement through their settlement with IPF, including the right to compel arbitration" and are therefore "bound by the arbitration agreement for their own claims." Def.'s Br. 7 (citing *Rugby Union*, 442 P.3d at 863-64. But Defendants point to no evidence that this is so, and without such evidence this Court will not hold that it is.[6]

### B.  Defendants May Not Invoke the Arbitration Agreement Under an Agency Theory.

Even if this Court did determine that Plaintiffs may be held to the Botani-IPF Agreement under Colorado contract law, to compel arbitration it would also have to find that Defendants— who are themselves not parties to the Agreement—may invoke it.

Defendants argue that Garcia may invoke the agreement because as Botani's sole member, he is an agent of a signatory to the agreement. Def.'s Br. 7-8. He cites a string of cases in which federal courts have "afforded agents, employees and representatives the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation." *Creative Telecomms., Inc. v. Breeden*, 120 F. Supp. 2d 1225, 1240 (D. Haw. 1999).

---

[6] The Claims that Plaintiffs are pursuing against Defendants are not invoking rights under the contract. SAC ¶¶ 57-66.

But Defendants ignore two important points. For one, under the Supreme Court's holding in *Arthur Andersen*, they must point to agency principles under *Colorado* contract law to determine whether an agent can enforce an arbitration agreement against a principal's contractual counterparty. *Cf. Hetrick*, 710 F. Supp. 3d at 483-484; *see supra* note 3. Defendants have not pointed to any Colorado law establishing such a principle, and the law they do cite only applies to agency to enforce an arbitration agreement against non-signatory plaintiffs. *Rugby Union*, 442 P.3d 859, 863-864 (recognizing "theories for *binding a nonsignatory* to an arbitration agreement") (emphasis added). Second, the federal law Defendants rely on is more nuanced than they suggest. Defendants cite to *Arnold v. Arnold Corp.-Printed Comms. For Bus.*, 920 F.2d 1269, 1281 (6th Cir. 1990) for the principle that where "individual defendants' allegedly wrongful acts" related to actions as "agents of the [signatory]," they may invoke an arbitration agreement. But other subsequent decisions in the courts of appeals have qualified and clarified this logic. In *McCarthy v. Azure*, 22 F.3d 351, 357-358 (1st Cir. 1994), the First Circuit distinguished between "service contracts" and the "Purchase Agreement" involved there, which used more confined language akin to the language at issue in the Botani-IPF agreement. This sort of language suggests "the signatories intended the arbitration provisions to be of a different scope." *Id.* at 358. Similarly, the Third Circuit recently held that when a nonsignatory attempts to enforce an arbitration agreement "an agency relationship—without more—is not enough." *Abdurahman v. Prospect CCMC LLC*, 42 F.4th 156, 160 (3d Cir. 2022). Rather, a nonsignatory must show that the dispute involves "actions it made on behalf of the signatory, as dictated by the specific contours of their relationship." *Id.* at 161. Here, Defendants have not shown why Garcia's alleged fraudulent conveyance or actions resulting in unjust enrichment were in his capacity as Botani's agent, so he may not himself compel arbitration.

Defendants also argue that Hamsa can invoke Garcia's arbitration rights because it is "alleged to have acted in concert with Garcia." Def.'s Br. 8. Not only does Plaintiff fail to cite any Colorado law supporting this principle, but Fourth Circuit law belies this argument. In *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005), the Fourth Circuit considered an effort by a non-signatory to compel arbitration but rejected it where the claims at issue were not for "breach of the underlying . . . contract." *Id.* Here too Plaintiffs have not raised any claims against Hamsa for breach of the Botani-IPF contract.

### C.   Even if Defendants Could Invoke the Arbitration Agreement, They Would Be Barred from Doing so on Account of Botani's Default.

Plaintiff argues that because in the Botani-IPF arbitration, Botani failed to pay its share of the administrated costs, Defendants are precluded from subsequently enforcing that agreement. Pl.'s Br. 4-5 (citing *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 194 (10th Cir. 2015); *Garcia v. Mason Contract Prods., LLC*, 220 WL 3259922, at *4 (S.D. Fla. Aug. 18, 2010)). If they are correct, then Defendants cannot compel arbitration *even if* they were otherwise entitled to.

Defendants don't dispute that Botani defaulted in the prior arbitration or quibble with the law Plaintiffs cite, but instead argue "[t]he failure by Botani to pay its portion of the fees in an arbitration between two businesses has no bearing on Garcia's rights as an individual to defend against these individual claims in the proper forum." Def.'s Br. 12. This line of argument is too clever by half. It is only by virtue of their relationship with Botani that Defendants can plausibly claim any right to compel arbitration under the arbitration agreement here. If, indeed, they are entitled to do so, then they are also bound by Botani's repudiation of that agreement. *See Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1011 (9th Cir. 2005) (holding that "breach [of an arbitration agreement] was tantamount to a repudiation of that agreement."). In other words, what's good for

the goose is good for the gander. Garcia, who is the sole member of Botani, cannot claim the benefits of but avoid the costs of Botani's agreement to arbitrate.[7]

## IV.    CONCLUSION

For the foregoing reasons, the Botani-IPF Agreement's arbitration clause cannot be invoked to compel Plaintiffs to arbitrate, the nonsignatory defendants cannot invoke the clause, and, even if they could, they would be barred from doing so by Botani's default in the prior arbitration. For these reasons, it is hereby

**ORDERED** that, in accordance with the Fourth Circuit's instructions on remand, the Court finds that this matter is not referable to arbitration; and it is further

**ORDERED** that the parties shall, on or before January 24, 2025, submit a joint status report with a proposal for proceeding in this litigation.

It is **SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

January 6, 2025
Alexandria, Virginia

---

[7] This logic is similar to the logic of equitable estoppel that Defendants themselves invoke. Under equitable estoppel in the arbitration context, "a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *International Paper*, 206 F.3d at 418. As a matter of equity, the inverse should also apply: a party may be estopped from asserting that the lack of his signature on a written contract insulates him from the consequences of a signatory's breaches, but consistently maintain that the same provision which the signatory breached should be enforced to benefit him.